UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| WILLIAM FRANK OSBORNE, | Case No. 2:20-cv-02260-MC |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| COLETTE PETERS, et al., | |
| Defendants. | |

MCSHANE, District Judge:

Plaintiff, an adult in custody (AIC) at the Two Rivers Correctional Institution (TRCI), filed this action alleging that defendants kept him in unsafe housing conditions and showed deliberate indifference to his serious medical needs. Plaintiff alleges violations of his civil and constitutional rights under federal and state law and asserts seven claims for relief. Defendants now move for summary judgment on grounds that plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act (PLRA), 42 U.S.C § 1997e(a), and failed to show that defendants' conduct violated the law. Defendants' motion is GRANTED.

1 - OPINION AND ORDER

## BACKGROUND

Plaintiff asserts seven claims for relief, *see* Am. Compl. ¶¶ 36-42, ECF 14, that allege the following: "(1) defendants permitted other AICs to extort and torture him for 137 days (*id.* at ¶ 36); (2) defendants assigned him to a housing unit with gang members resulting in AIC Ritchie assaulting him on July 9, 2019 despite him requesting to be housed on a unit without gang members or be housed in administrative housing (*id.* at ¶ 37); (3) defendants failed to provide him with adequate medical treatment following the July 9, 2019 assault (*id.* at ¶ 38); (4) defendants failed to report the July 9, 2019 assault to the Oregon State Police (OSP) (*id.* at ¶ 39); (5) defendants refused to separate AICs affiliated with gangs from non-gang members resulting in AIC Henry threatening him on December 21, 2019 (*id.* at ¶ 40); (6) beginning on February 25, 2020, defendants permitted AIC Ritchie to continue to extort and threaten him (*id.* at ¶ 41); and (7) defendants forced him to work in TRCI's kitchen, where he was subjected to continued threats and was required to perform job duties that caused him severe pain (*id.* at ¶ 42)." Mot. 2, ECF 29.

## STANDARDS

To prevail on their motion for summary judgment, defendants must show there is no genuine dispute as to any material fact and they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) ("If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56."). The court must construe the evidence and draw all reasonable inferences in the light most favorable to plaintiff. *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

**PLRA REQUIREMENTS**

The Prison Litigation Reform Act (PLRA) requires inmates to exhaust all available administrative remedies before filing a federal action to redress prison conditions or incidents. *See* 42 U.S.C § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *see also, Porter v. Nussle*, 534 U.S. 516, 532 (2002) (holding that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong").

The exhaustion requirement is mandatory and requires compliance with both procedural and substantive elements of the prison administrative process. *Woodford v. Ngo*, 548 U.S. 81, 85, 90 (2006); *McKinney v. Carey*, 311 F.3d 1198, 1199-1200 (9th Cir. 2002) (per curiam). If the defendant shows that the inmate did not exhaust an available administrative remedy, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172; *see also Ross v. Blake*, 578 U.S. 632, 642 (2016) ("[A]n inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'") (citation omitted). This burden is met when the prisoner shows that he or she took "reasonable and appropriate steps" to pursue administrative remedies, but prison officials nonetheless interfered with the prisoner's attempts to exhaust or failed to follow correct grievance protocol. *Nunez v. Duncan*, 591 F.3d 1217, 1224 (9th Cir. 2010).

3 - OPINION AND ORDER

## DISCUSSION

Defendants argue they are entitled to summary judgment because plaintiff failed to exhaust his administrative remedies regarding his first, second, third, fifth, sixth, and seventh claims. Mot. 3, ECF 29. Defendants argue that plaintiff's fourth claim should be dismissed because defendants did not violate any laws when they failed to report to OSP that an AIC attacked plaintiff on July 9, 2019. *Id.* at 8-11.

**I.   PLRA Analysis**

The Oregon Department of Corrections (ODOC) refers to inmates as 'adults in custody' or AICs and has a three-step grievance and appeal process to address AIC complaints. *See* Or. Admin. R. 291-109-0100 *et seq*. Generally, the AIC must file a grievance within fourteen days of the alleged issue or incident being grieved. *Id*. 291-109-0205(1). A grievance that does not comply with the applicable submission rules will be "returned for correction" to the AIC and may not be appealed. *Id*. 291-109-0225(2). Instead, the AIC may resubmit the grievance within fourteen days if the errors can be corrected; an AIC is given two opportunities to resubmit a grievance and comply with the submission requirements. *Id*. If a grievance is accepted, the AIC may appeal any response to the grievance within fourteen days after the response is sent to the AIC. *Id*. 291-109-0205(3). If the appeal is accepted, the AIC may file a second appeal within fourteen days after the appeal response is sent to the AIC. *Id*. 291-109-0205(5). A decision following a second appeal is final and not subject to further review. *Id.* 291-109-0235(i). If the AIC can "satisfactorily demonstrate why the grievance could not be timely filed", *id.*, the AIC may be able to submit an initial grievance or grievance appeal after the fourteen days specified for each type of filing. *See id.*; *see id.* at 291-109-225(1) and (3).

Plaintiff does not dispute that he failed to file a grievance regarding his first, second, third, fifth, sixth, and seventh claims. Instead, he argues that ODOC's administrative remedies were effectively unavailable to him, and he asserts numerous reasons for failing to file grievances. While some of plaintiff's excuses are redundant and not applicable to all of his claims, he argues, in essence, that he failed to file grievances for one or more of the following reasons: (1) he was "denied knowledge of, and access to" the grievance system; (2) the grievance system is "a rigged mechanism to ensure AIC issues *cannot* be resolved" (emphasis in original); (3) ODOC's denial of grievances shows "no effective or honest grievance system exists"; (4) he feared that doing more than sending a kyte would "invoke retribution" by gangs or TRCI guards; and (5) it is not possible to grieve constitutional claims. *See* Resp. 3-14, ECF 37.

### 1. Denial of Access to Remedies

Regarding his first claim, plaintiff argues that he was not able to file a grievance because, starting on the day he arrived at TRCI, February 5, 2019, he was "confined to a cell by active gangs, [and] unable to discover . . . an ODOC grievance system existed." Resp. 3-4, ECF 37. The court acknowledges plaintiff was a first-time AIC and new to TRCI. However, the record shows that plaintiff attended Admission and Orientation (A&O) on March 21, 2019, and there is no question that he "received information about ODOC's . . . grievance systems" as part of A&O. Reply 4, ECF 41; *see* Hunter Decl. 2, ECF 42. It is also clear that grievance forms were "freely available" on Unit 6 where plaintiff was housed. *Id.* Thus, even if plaintiff did not know about the grievance system prior to attending A&O on March 21, 2019, he could have filed a grievance regarding his first claim on or after that date. Moreover, had plaintiff done so, it would have been timely because his first claim alleges that he was assigned unsafe housing conditions in Unit 6 that were continuous and on-going between February 5, 2019, and June 20, 2019. *See* Am.

5 - OPINION AND ORDER

Compl. ¶ 24-36, ECF 14. By alleging that he was too scared to leave his cell due to gang threats, plaintiff implies that he was unable to access grievance forms. However, the record shows that plaintiff left his cell in Unit 6 to seek counseling and for other purposes, which makes it less plausible that he was too scared to leave his cell to obtain a grievance form. Further, as defendants point out, "in the event an AIC is unable to leave their cell for whatever reason, they can request a grievance form via their cell's intercom, by asking a correctional officer during tier check, or by sending a kyte to the grievance department." Olsen Decl. 2, ECF 43. In light of this evidence about the grievance system, which plaintiff does not contest, plaintiff's alleged cell confinement cannot excuse his failure to file a grievance concerning his first claim.

    **2.**    **Futility**

Additionally, plaintiff argues, he failed to file a grievance on his first claim because he concluded that the system is "rigged" and "worthless", Resp. 4, and because "every defendant ignored plaintiff's pleas for relief" after he informed many TRCI staff, including defendants Swart, Ray, Olsen, and Wong, that he was being forced to stay in his cell under threat of violence. Am. Compl. ¶ 36, ECF 14. However, "[a]n AIC's belief that his grievance will be denied is not a sufficient reason to pick and choose when to file a grievance." *Matthews v. Carey*, No. 2:18-CV-01618-SB, 2021 WL 1759264, at *7 (D. Or. May 4, 2021) (citing *Sheridan v. Reinke*, 611, F. App'x 381, 383 n. 1) (citing *Sapp v. Kimbrell*, 623 F.3d 813, 827 (9th Cir. 2010)). Further, "[a plaintiff's] subjective belief that the use of the grievance system would be futile, without more, does not excuse his failure to exhaust." *Sheridan*, 611 F.App'x at 383 (citing *Sapp*, 623 F.3d at 827). In *Sapp*, the plaintiff asserted a "good faith belief" that it was not possible to pursue remedies further, but the Ninth Circuit held that the plaintiff "could have no *reasonable* belief that administrative remedies were effectively unavailable" where he had

"never even attempted to file any such grievance." *Id.* at 826-27 (emphasis in original). The same is true here. While plaintiff asserts that "ODOC provides only a rigged grievance system . . . in which the process is futile," Resp. 14, he appears to base that on his efforts to seek help through kytes, reports to BHS, and conversations with ODOC staff—none of which involved the grievance system. Therefore, plaintiff could not reasonably believe that it would have been futile to file a grievance or that remedies were not available. *See Sapp*, 623 F.3d at 826-27; *see also, Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 222 (6th Cir. 2011) ("[t]o further the purposes behind the PLRA, exhaustion is required even if the prisoner subjectively believes the remedy is not available"); *Matthews*, 2021 WL 1759264, at *7 (finding that the plaintiff's subjective belief that the system was "rigged" could not justify his failure to exhaust his administrative remedies).

    **3.**     **ODOC's Denial of Grievances**

Starting in October 2019, plaintiff filed grievances with ODOC, but they were not related to claims raised in this action, other than his fourth claim. Plaintiff now points to ODOC's responses to those grievances as part of a general explanation for his failure to file grievances related to the issues that he raises here. *See* Resp. 6-10, ECF 37.

Plaintiff objects to the fact that ODOC denied some of his grievances for reasons such as exceeding monthly limits and grieving duplicate issues. *Id*. Plaintiff argues that such denials show that ODOC "automatically denie[s]" grievances and "does not honestly investigate grievances," Resp. 7, but those assertions are essentially a broader version of plaintiff's futility argument and, as such, they do not strengthen his claim that remedies were effectively unavailable. *See Sapp*, 623 F.3d at 826-27. To the extent that plaintiff takes issue with ODOC's specific grievance procedures, "the PLRA exhaustion requires proper exhaustion." *Woodford*, 548 U.S. at 93. That means that an AIC must "complete the administrative review process in

7 - OPINION AND ORDER

accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Marella v. Terhune*, 568 F.3d 1024, 1027 (9th Cir. 2099) (quoting *Woodford*, 548 U.S. at 88). Therefore, ODOC requiring plaintiff to comply with applicable procedures cannot excuse plaintiff's failure to exhaust remedies in this case. *See id.; see also, Matthews*, 2021 WL 1759264, at *7 (holding that, "the return of [the plaintiff's] grievances for failure to comply with the rules, or his failure to understand the grievance process requirements, does not demonstrate that the grievance process was unavailable").

    4.    **Fear of Retaliation**

Plaintiff asserts a general argument that he failed to pursue ODOC remedies because he believed it would "invoke retribution from gangs or by [TRCI] guards" for "reporting and pleading for relief." Osborne Decl. 12, ECF 37-1.

The Ninth Circuit has held that "fear of retaliation may be sufficient to render the inmate grievance procedure unavailable." *McBride v. Lopez*, 807 F.3d 982, 984 (9th Cir. 2015); *Rodriguez v. Cnty. of L.A.*, 891 F.3d 776, 792 (9th Cir. 2018) ("a prisoner is excused from the exhaustion requirement in circumstances where . . . a prisoner has reason to fear retaliation for reporting an incident") (citing *McBride*, 807 F.3d at 987). "To render the grievance procedure unavailable by 'a threat of retaliatory action by a prison guard,' a plaintiff must show both an objective and subjective basis for a fear of retaliation." *Goodlow v. Camacho*, No. 3:18-CV-0709-CAB-MDD, 2020 WL 5709255, at *9 (S.D. Cal. Sept. 24, 2020) (quoting *McBride*, 807 F.3d at 984). *Id*. Here, plaintiff alleges that an intake officer ordered him to accept Unit 7 housing "under threat of additional retribution and punishment", Resp. 38, but he does not allege that the officer or anyone tried to dissuade him from filing a grievance about that incident or any other incident related to plaintiff's claims. *See McBride*, 807 F.3d at 988 (finding "no reason to

8 - OPINION AND ORDER

allow inmates to avoid filing requirements on the basis of hostile interactions with guards when the interaction has no apparent relation to the use of the grievance system"). There is also no evidence that any TRCI personnel threatened or punished plaintiff when he sought help through kytes, reports to BHS, conversations with TRCI officers, and letters to officials concerning the issues he raises in this action. *See Goodlow*, 2020 WL 5709255, at *10 (rejecting the plaintiff's retaliation excuse where he "failed to produce evidence of specific threats from Defendants or other [prison] personnel to support his contention that he had a subjective fear of retaliation if he proceeded with his grievance").

Because plaintiff has not alleged facts or submitted evidence that could substantiate his fear of retaliation, this argument provides no basis for finding that administrative remedies were effectively unavailable for the claims he asserts in this action. *See McBride*, 807 F.3d at 988 (holding there was "no objective indication that a reasonable inmate would have understood . . . that the guards intended to retaliate for filing a grievance"); *cf. Rodriguez*, 891 F.3d at 794 (holding that administrative remedies were effectively unavailable where the plaintiff "provided factual statements supporting an actual and objectively reasonable fear of retaliation for filing grievances").

### 5. Administrative Remedies for Constitutional Claims

Plaintiff argues that he failed to file the requisite grievances about the claims in this action because ODOC's administrative remedies provide "no means to resolve US Constitutional rights violations." Resp. 5, ECF 37. As defendants point out, the applicable rules explicitly provide that AICs may grieve several constitutional rights issues including "inadequate medical care or mental health treatment" and "excessive use of force". *See* OAR 291-109-0210(3)(c) and (e). The administrative rules governing grievances also make it clear that the list of issues an

AIC may grieve is not exhaustive. *See* OAR 291-109-0210 (3) ("An AIC may file a single grievance concerning any incident or issue regarding institutional life that directly and personally affects that AIC, including but not limited to . . ."). Because the applicable rules allowed plaintiff to file a grievance related to each of his claim in this action, plaintiff's assertion that constitutional claims could not be grieved does not excuse his failure to exhaust remedies.

In sum, plaintiff asserts myriad arguments to explain his failure to file grievances concerning his first, second, third, fifth, sixth, and seventh claims, but none of them show that remedies were effectively unavailable. Defendants are therefore entitled to summary judgment on plaintiff's claims, except his fourth claim, for failure to exhaust administrative remedies. *See Owens v. Miller*, No. 6:21-CV-00870-MC, 2022 WL 1443238, at *1 (D. Or. May 6, 2022) (granting the defendants summary judgment where the plaintiff failed to exhaust his administrative remedies before filing suit).

**II.     Failure to Report to OSP**

Plaintiff's fourth claim alleges:

> Plaintiff communicated both verbally and/or in writing with defendants Peters, Gower, Nooth, Blewett, Jackson, Rumsey, Lytle, Robinson, Bauer, Short, Simon, plus Defendant Ridley's unknown involvement asking they obey ODOC policies, and recognize plaintiff's US Constitutional rights, and report the brutal felony assault, as mandated in DOC Policy 40.1.6 to Oregon State Police. In conspiracy to deny plaintiff's US Constitutional Rights EVERY defendant contacted refused to protect plaintiff's rights and report an Oregon crime, committed in Oregon, at TRCI, where defendants knew a crime had been committed while defendants were in command.

Am. Compl. ¶ 39, ECF 14. Defendants argue they are entitled to summary judgment on this claim because they were not required to report the attack on plaintiff to OSP, and because their failure to report the attack does not violate federal or state law. Mot. 8-12, ECF 29. The court agrees.

10 -   OPINION AND ORDER

ODOC Policy 40.1.6, entitled, "Unusual Incident Report Process", establishes processes for reporting unusual incidents, and the definition of "unusual incidents" includes "any incident which constitutes an immediate threat to the life or health of staff, an inmate/offender". Nofziger Decl. Ex. 13, ECF 29. The policy states that, "[f]unctional unit managers or their designees shall be responsible for reporting usual incidents to other officials such as Oregon State Policy . . . as required." *Id*. Plaintiff argues that the phrase, "as required" means that managers have no discretion to report attacks like the once he suffered on July 9, 2019. Resp. 20, ECF 37. Defendants cite freedictionary.com and correctly point out that "as required" means "according to need" in this context. Mot. 8, ECF 29.

The parties cite no cases that address ODOC's obligations under this policy, but defendants submitted the declaration of Assistant Inspector General Melissa Nofziger who explained how the policy works and sheds light on the phrase "as required". *See* Nofziger Decl. 2, ECF 29. Nofziger confirmed that no ODOC employee prepared an Unusual Incident Report when plaintiff was attacked on July 9, 2019; according to Nofziger, this "indicates that the assault did not include any unusual factors and was not prosecutable under the guidelines." *Id.* Nofziger explained that, "[i]n determining whether to report an unusual incident to law enforcement, ODOC coordinates with OSP and district attorneys' offices". *Id.* Nofzier further explained that the Umatilla County district attorney's office "may prosecute an AIC assault if it constitutes a felony, with consideration to level of injury, cooperation of victim, and availability of extrinsic evidence and witnesses."[1] *Id.* Nofizer also noted that the Umatilla County district attorney's office "ordinarily only accepts AIC assaults in which an AIC has suffered a significant

---

[1] TRCI is located in Umatilla County.

11  -  OPINION AND ORDER

injury, an AIC has used a weapon to commit the assault, multiple AICs have assaulted one AIC, or some other unusual factor is present." *Id.*

Nofziger describes a deliberative process that considers multiple factors and, when appropriate, involves collaboration with OSP and the Umatilla County district attorney's office. *See id.* This evidence supports defendants' argument that unit managers have discretion in determining whether an "unusual incident" occurred that should be reported to outside agencies.

Plaintiff dismisses Nofziger's declaration as "further material evidence" of a conspiracy to deprive him of his rights, Resp. 50, and he argues forcefully that the July 9 attack constituted a felony and that defendants should be held liable for "conspiratorially" failing to report a felony and for "suppressing a lawful investigation." *Id.* at 22. It is unnecessary for the court to determine whether the attack was a felony, and plaintiff offers no evidence that defendants conspired against him or suppressed an investigation of the incident. In fact, it is clear that ODOC investigated the incident, conducted a disciplinary hearing, and sanctioned AIC Richie, the attacker, for "major misconduct". Resp. Ex. 43, ECF 37-1. Further, when plaintiff stated his desire to press charges against AIC Richie through at least nine kytes he filed between October and December 2019, ODOC staff gave him AIC Richie's name, his state identification number, the case number for his disciplinary hearing, and the mailing address for OSP, and they told plaintiff multiple times, "[y]ou may contact the State Police via letter with your desire to press charges." *See* Resp. Exs. 5, 36, 37, 40, 41, and 63, ECF 37-1.

Additionally, when plaintiff grieved ODOC's failure to contact OSP, Capt. Lytle noted ODOC's investigation of the attack and explained ODOC's failure to report the incident to OSP:

> On December 6, 2019, I did meet with you and attempted to explain why no one would contact the State Police regarding an apparent assault which occurred in July 2019. I advised you of some possible options you may have and you indicated you understood. The involved Adult in Custody did receive a major

12 -  OPINION AND ORDER

> misconduct report which found in violation and was sanctioned by the Hearings
> Adjudicator as are all the assaults at this level. If the incident would have reached
> the level to notify the State Police it would have been completed at the time of the
> event by the Officer in Charge during the assigned shift. I supported the decision
> at that time and I support it now.

*Id.* Ex. 43. Capt. Lytle's response corroborates Nofziger's account of how the unusual incident reporting process works in practice, and this evidence confirms that ODOC officials exercise discretion in determining whether a situation constitutes an "unusual incident" that should be reported to appropriate agencies. Even looking at the evidence in the light most favorable to plaintiff, it is clear that defendants were not under legal mandate to report the July 9 attack on plaintiff to OSP. Because of this, and because the court is not aware of any case that imposes liability for noncompliance with Policy 40.1.6, defendants are entitled to summary judgment on plaintiff's fourth claim.

### III.  Discovery Issues

Plaintiff argues that "summary judgment should still be denied due to Defendants' denial of material evidence."[2] Resp. 58, ECF 37. However, the record shows that plaintiff was provided with all documents related to his grievance history and had access to all laws and policies defendants relied on in moving for summary judgment. Reply 9, ECF 41. Further, plaintiff does not show how the requested documents—photographs of his alleged injuries, an inmate property list, and Code of Ethics forms signed by defendants, among others—are essential to his opposition to defendants' motion to dismiss. In fact, even assuming defendants failed to produce

---

[2] Plaintiff asserts similar claims as those asserted in his Motion to Compel. *See* ECF 23. The court deferred ruling on that motion and plaintiff's Motion to Amend Complaint, ECF 22, until resolution of defendants' Motion for Summary Judgment. *See* ECF 29. Plaintiff's Motion to Amend Complaint sought to add a single defendant after plaintiff obtained his name through discovery and did not present new claims or issues. Given the current disposition of defendants' Motion for Summary Judgment, the court now finds it unnecessary to resolve plaintiff's two outstanding motions, ECF 23 and ECF 24, and therefore denies them both as moot.

13 - OPINION AND ORDER

the requested documents, it is clear plaintiff suffered no prejudice in responding to defendants' motion for summary judgment. Therefore, defendants' responses to plaintiff's discovery requests do not render summary judgment improper for defendants.

## CONCLUSION

Plaintiff failed to exhaust his administrative remedies before filing suit, and defendants were not legally obligated to report the July 9 attack to OSP. Defendants' Motion for Summary Judgment (ECF 29) is GRANTED and plaintiff's claims are dismissed without prejudice. Plaintiff's Motion to Amend Complaint (ECF 22) and Motion to Compel (ECF 23) are DENIED as moot.

IT IS SO ORDERED.

DATED this 22nd day of July, 2022.

       \_\_\_s/Michael J. McShane_____
       MICHAEL J. MCSHANE
       United States District Judge